IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2000 Session

# EDDIE JOE DORRIS, ET AL. v. JEFFERY CRISP

**Appeal from the Chancery Court for Rutherford County**
**No. 99D-938    Don Ash, Chancellor**

---

**No. M2000-02170-COA-R3-CV - Filed June 1, 2001**

---

Over four months after signing a surrender of her parental rights and consent for her minor child to be adopted, Appellee filed a Petition to Set Aside Surrender on the basis of a procedural defect. The Chancellor held that Appellee had abandoned the child, that the surrender executed by Appellee on June 24, 1999 should be set aside because there was no home study performed prior to the surrender, and dismissed the petitions for adoption. The Chancellor ordered the child returned to the custody of Appellee, which order was stayed by this Court September 19, 2000. The adoptive parents appeal raising the following issues for consideration: (1) Whether the mother has standing to attack the surrender on the basis of a lack of a home study, (2) whether the surrender is valid, and (3) whether the trial court was limited to the criteria set forth in Tennessee Code Annotated section 36-1-113(h) in determining whether termination of parental rights was in the child's best interests. We reverse and find the surrender valid.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Louise R. Fontecchio, Nashville, Tennessee, for the appellants, Eddie Joe Dorris and Linda Faye Dorris.

Paul A. Rutherford and L. R. DeMarco, Nashville, Tennessee, for the appellee, Chasity Holmes Crisp.

## OPINION

Devin Crisp (hereinafter "child"), was born to Appellee on January 7, 1999. In the spring following his birth, Appellee went through a separation from her husband, the child's biological father. Appellee and her husband had two children together. Appellee has custody of the older child.

Appellee testified that she placed the younger child, Devin Crisp, in the care of others because she was financially unable to support him. The child stayed with several people prior to his placement with Appellants. Appellee, after keeping the child only a couple of months, sent the child to stay with the child's maternal grandmother, from the middle of March until May 1999.

In May 1999, Appellee placed the child with Mrs. Tims. The child remained with Mrs. Tims over Memorial Day weekend 1999. Then, the Appellee placed the child with the Pruitts, where he remained for a week.

Appellee's father arranged a meeting between the parties in this lawsuit. Appellee met the Appellants and interviewed them as potential adoptive parents for the child. Appellee chose Appellants to adopt the child. A time was scheduled for Appellants to pick the child up. Appellee did not provide the child at the first scheduled time. Prior to the child ultimately being placed with Appellants, he stayed with the maternal grandmother for a few days, then stayed with Joy Dorris, Appellant Linda Dorris' sister-in-law, until June 17, 1999. Thereafter, the child stayed with Appellants.

On June 24, 1999, in the Chancery Court for Rutherford County, Appellee appeared and executed a surrender of her parental rights and consent for the child to be adopted by Appellants. Appellants filed a Petition to Adopt and an Order of Guardianship was entered. Thereafter, a home study was completed by the Court Appointed Special Advocates' ("CASA") office. CASA is not a licensed child-placing agency. At the time the surrender was executed, no home study had been performed.

The parties had contact prior to the initiation of this lawsuit in October 1999. In July 1999, Appellee phoned Appellants requesting a visit with the child. Appellants agreed. At the meeting, Appellee did not indicate an intention to visit the child again or any desire to have the child returned to her.

Appellee called Appellants on September 8, 1999 to ask about the child. Appellee did not express any indication she wanted the child back. On October 11, 1999, Appellee called again to inquire about the child.

On October 27, 1999, Appellee filed a Petition to Set Aside the Surrender on the grounds that no home study was performed prior to the execution of the surrender on June 24, 1999 as required by Tennessee Code Annotated section 36-1-111(a)(1)-(2) and (d)(1). In December 1999, Miriam's Promise, a licensed child-placing agency, performed a home study. The first time Appellee paid any support for the child was in December of 1999.

The Chancellor heard the Petition to Set Aside Surrender on January 21, 2000 and took it under advisement. The Chancellor granted Appellee visitation rights pending the ruling. Also on January 21, 2000, Appellants filed an Amended Petition for Adoption on the basis of abandonment.

The Chancellor held that the surrender was ineffective. On March 17, 2000, an Order was entered stating:

     1.     There is no dispute that no home study was conducted and no court report based upon a home study was submitted within the time constraints of Tennessee Code Annotated § 36-1-111(a)(2).

     2.     The surrender performed on June 24, 1999, in the chambers of Circuit Judge Royce Taylor should be set aside because of the failure of the Petitioner to conduct a home study prior to the surrender.

     3.     The Order of Guardianship shall remain in effect.

     4.     The Amended Petition for Adoption will remain a pending matter before this Court.

     5.     The Motion to Reestablish Visitation will require a further hearing.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Petition to Set Aside the Surrender is granted, and the surrender of June 24, 1999, is hereby set aside and for nothing held.

The case was tried on August 17 and 29, 2000. The Chancellor held that the child had been abandoned, but that clear and convincing evidence had not established a basis for termination of Appellee's parental rights.

The final order was entered on September 6, 2000 stating:

     1.     That the Petitioners have proven by clear and convincing evidence that the natural mother, Chasity Holmes Crisp, intentionally abandoned the minor child, Devon Joseph Crisp, pursuant to the definition of abandonment in In Re: Swanson 2.SW.3d (180) and In Re: Adoption of Bowling 631 .SW.2d (386).

     2.     That the Petitioners have failed to carry the burden of proof in showing that the termination of the natural mother's parental rights would be in the child's best interest pursuant to T.C.A. § 36-1-113(c)(2). There is no proof to contradict that the natural mother now lives in a home that would be a safe environment for the minor child. The natural mother has maintained regular visitation or other contact with the minor child. The natural mother attempted to keep in telephone contact at least for some limited purpose during the three (3) or four (4) months from the time of the surrender until October 1999, and then she attempted once again to try and establish visitation. There has been a meaningful relationship between the natural mother and the minor child. There is not sufficient proof in the record to show that harm would be permanent or long lasting to the child

by changing the caretaker to the natural mother. There is no proof that the natural mother has any mental condition that would be unsafe for the minor child. The natural mother has paid support before the termination petition was filed.

> 3. That the Petition for Adoption, Amended Petition for Adoption, and Second Amended Petition for Adoption should be dismissed.

> 4. That the natural mother shall have visitation privileges with the minor child for every weekend until September 12, 2000, from Friday at 5:00 p.m. until Sunday at 5:00 p.m. The minor child shall be returned to the natural mother on a permanent basis on September 12, 2000. . . .

The determinative issue on appeal is whether the Chancellor erred in setting the surrender aside because of the failure of a licensed child-placing agency to perform a home study. Appellee maintains that the June 24, 1999 surrender was not made in accordance with Tennessee Code Annotated section 36-1-111(a)(1)-(2), and that pursuant to Tennessee Code Annotated section 36-1-111(d)(1), the surrender is invalid. A surrender is defined as:

> "Surrender" means a document executed under the provisions of § 36-1-111 or under the laws of another state or territory or country, by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child, to another person or public child care agency or licensed child-placing agency for the purposes of making that child available for adoption;

Tenn. Code Ann. § 36-1-102(45)(2000).

Tennessee Code Annotated section 36-1-111(a)(1)-(2) and (d)(1) provide:

> (a)(1) Prior to receiving a surrender by a parent of a child or prior to the execution of a parental consent by a parent in a petition for adoption, the prospective adoptive parents <u>may</u> request that a licensed child-placing agency, a licensed clinical social worker, or, if indigent under federal poverty guidelines, the department, to conduct a home study or preliminary home study for use in the surrender, or parental consent proceeding, or in the adoption.

> (2) A court report based upon the home study or preliminary home study must be available to the court or, when using a Tennessee surrender form, to the persons under subsection (h), (i), or (j), and, before the surrender to prospective adoptive parents is executed, the court report must be reviewed by the court or persons under those subsections in any surrender proceeding in which the surrender is not made to the department or a licensed child-placing agency. When a parental consent is executed, the court report based upon the home study or preliminary home study must be filed with the adoption petition, and must be reviewed by the court before the entry of an order of guardianship giving the prospective adoptive parents guardianship of the child.

. . . .
(d)(1) No surrender or any parental consent shall be valid which does not meet the requirements of subdivision (a)(2).

Tenn. Code Ann. § 36-1-111(a)(1)-(2), (d)(1) (2000) (emphasis added).

When a surrender has been executed, it may be revoked within ten days. Tenn. Code Ann. § 36-1-112(a)(1)(A)(2000).

A home study was not performed prior to the June 24, 1999 surrender. A home study is defined as:

> "Home study" means the product of a preparation process in which individuals or families are assessed by themselves and the department or licensed child-placing agency, or a licensed clinical social worker <u>as to their suitability for adoption and their desires with regard to the child they wish to adopt</u>. The home study shall conform to the requirements set forth in the rules of the department and it becomes a written document which is used <u>in the decision to approve or deny a particular home for adoptive placement</u>. The home study may be the basis on which the court report recommends approval or denial to the court <u>of the family as adoptive parents</u>. A court report based upon any home study conducted by a licensed child–placing agency, licensed clinical social worker or the department which has been completed or updated within six (6) months prior to the date of the surrender or order of reference shall be accepted by the court for purposes of §§ 36-1-111 and 36-1-116. The home study shall be confidential, and at the conclusion of the adoption proceeding shall be forwarded to the department to be kept under seal pursuant to § 36-1-126, and shall be subject to disclosure only upon order entered pursuant to § 36-1-138;

Tenn. Code Ann. § 36-1-104(24)(2000) (emphasis added).

The "home study" definition does not mention the surrendering natural parent and has no purpose except to assure the fitness of the adopting parents. The purpose of a home study is to protect the child, not the biological mother.

In *Hatcher v. Patterson*, 16 S.W.3d 792 (Tenn. Ct. App. 1999), this Court addressed a trial court's finding of voiding an adoption for substantive and procedural problems including the failure of the biological mother to sign a surrender and the failure to complete a home study. *Hatcher* is applicable to the present case. In *Hatcher*, a pregnant, unwed teenager sought a couple to adopt her unborn child. *Hatcher*, 16 S.W.3d 792, 793 (Tenn. Ct. App. 1999). She chose a couple to adopt the child. The adoptive parents took the child home with them after the child was released from the hospital. A petition for adoption was executed under oath before the juvenile judge. Approximately a year after the child's birth, the biological mother filed a Petition to Set Aside the Adoption because,

among other procedural defects, no home study was completed. The trial court ordered the adoption set aside and ordered the return of the child to the biological mother. *Id.*

With regard to the surrender in *Hatcher*, this Court stated:

> We are satisfied, however, that Ms. Patterson effectively surrendered the child. The Juvenile Court of Dickson County does have jurisdiction to accept her surrender, Tenn. Code Ann. § 36-1-111(b), and Ms. Patterson did everything necessary to surrender the child except sign the surrender document. She selected the Hatchers as the persons she wished to adopt her child. She appeared in court before the juvenile judge and signed the adoption petition under oath.
> . . . .
> At oral argument counsel for Ms. Patterson conceded that Ms. Patterson intended to permit the Hatchers to adopt the child and that she has no basis to challenge the adoption other than the defects and oversights in the preparation and execution of the forms. Counsel also conceded that Ms. Patterson made the decision to surrender the child with full understanding of her options and the consequences of her decision. There is no evidence in the record that she felt any remorse about her decision or that she attempted to revoke her surrender within the time provided by Tenn. Code Ann. § 36-1-112 (1996).
> . . . .
> Undoubtedly other unfulfilled requirements lurk in the labyrinthine provisions of the adoption laws, but as a consequence of her surrender Ms. Patterson no longer has the standing to raise them.

*Hatcher v. Patterson*, 16 S.W.3d 792, 796-97 (Tenn. Ct. App. 1999).

In the present case, a copy of the surrender is not contained in the record on appeal. As in *Hatcher*, Appellee does not deny that she willingly and with full understanding of what she was doing, went before the judge and surrendered the child. At the hearing, Appellee testified as follows:

> Q. Do you remember being asked by the judge if you were sure this is what you wanted to do?
> A. Yes.
> Q. And were you under oath?
> A. Yes.
> Q. Did you understand the importance of what you were doing?
> A. Yes.
> Q. And did you tell the judge that, yes, you wanted to give up all parental rights and responsibilities for this child?
> A. Yes.
> Q. Did you understand that if you did this, the child was not going to be yours anymore?

A. Yes.

. . . .

Q. And the judge explained to you at that time that if you changed your mind you needed to do it within ten days, didn't he?

A. Yes, he did.

Q. And did you understand that?

A. Yes.

Q. But you didn't do anything within ten days, did you?

A. No. I couldn't. I wasn't financially able at the time.

Q. Well, did the judge tell you that you needed a lawyer or did he just tell you you needed to come up here to court and see anybody in - -

A. I was not financially able to take care of Devin.

Q. Okay. So you weren't able to care for him then?

A. Financially, no.

Q. All right. You have another child?

A. Yes, I do.

Q. And you're providing a home for him?

A. Yes.

Applying a literal construction of Tennessee Code Annotated section 36-1-111(a)(1) and (2), the trial judge felt he was compelled to invalidate the surrender. He then went on to hold that Appellee had willfully abandoned the child. Further, feeling himself bound by the factors of Tennessee Code Annotated section 36-1-113(c), he held that Appellants had failed to prove by clear and convincing evidence that termination of parental rights was in the best interests of the child. On this basis, he dismissed the petition to terminate parental rights and the adoption petition, and ordered the child returned to Appellee.[1] In acting as he felt the law compelled him to do, the learned Chancellor made certain observations which are well to repeat in order to focus on the human side of his dilemma.

THE COURT: Mr. and Mrs. Dorris, let me tell you what my choices are. I either do what I want to in my heart or what I want to in my head. Those are my choices.

Obviously, you two are fine people. Obviously, you came into the situation where you were going to help somebody and that's something I think is a very good thing. But I also took the oath when I took this to follow what the law is in Tennessee.

And I can disregard what the law is in Tennessee and let the child stay with you all and they'll appeal and, in my opinion, you'll lose the appeal. So I just drag and tag you on for another year or two. And I'm not going to do that. I'm not.

---

[1] The portion of the order of the trial court compelling the return of the child to the appellee was stayed by this Court in an order entered September 19, 2000.

-7-

I've got to follow what the law is. And I'm sorry about that. I wish I didn't. But it's not fair to you if I don't follow the law.

So, first of all, as Ms. Fontecchio said, it is a two-prong test. First, I've got to find by clear and convincing evidence whether or not one of the asserted grounds for termination is this, that's the Code Section 36-1-113.

I'm going to find that this lady intentionally abandoned this child. That's In re: Swanson 2 S.W.2d - - 3d 180 and In re: Adoption of Bowling at 631 S.W.2d 386. And the language there says in Swanson: Abandonment comports any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child.

Obviously, ma'am, you did that. You may get up here and say today you didn't do it, but when you went up there in front of Judge Taylor and surrendered that child, you did that.

Also, there was an actual desertion accompanied with an intent to entirely sever so far as is possible to do so the parental relationship and throw off all obligations growing out of that. You did that.

I'm sorry that whoever's responsible for doing that home study or getting that done when these people went up there to surrender that child didn't do their job. They didn't. And because of that you're suffering. I can't go back in time and fix that. I wish they would've done what they should have done, but they didn't.

Mrs. Fonetecchio and - - I agree, whether that part needs to be followed or not, I think it does. But, I also think that this lady's intent on that day was to abandon the child and she continued with that intent. She did that for three or four months, while you all were basically raising her child, taking on that responsibility.

Like you said, going to church, feeding the child every day, changing the diapers, all those things. So that's the first prong of the test. And I'm going to find by clear and convincing evidence that on that day she did abandon.

The second part of the test, Mr. and Mrs. Dorris, though, is where you will not be successful.

. . . .

Based upon all that, I'm going to dismiss the petition for termination, dismiss the petition for adoption. Tell Mr. and Mrs. Dorris I'm sorry, that the child needs to be returned to the natural mother.

And, ma'am, you've not done well on this. These people came to that child's rescue when nobody else was there, when you weren't there.

And, Mr. and Mrs. Dorris, I'm sorry I've got to do this. I don't want to do this. But I've got to follow what the law is in Tennessee. Like I said, I'm deeply, deeply sorry.

I believe fine people like you that come to the rescue - - especially of children - - there's a place in heaven for them. I believe that. And, like I said, I'm very sorry I've got to do this.

As the Chancellor so correctly observed, this record discloses a child having no stability through the first six months of his life and then finding a stable and loving environment with Eddie Joe and Linda Faye Dorris as prospective adoptive parents. The home study report of Miriam's Promise reported on March 1, 2000, confirms the observations of the trial judge relating to the fitness of Mr. and Mrs. Dorris.

This Court has observed: "No parent has the right to abandon all responsibility, yet insist that the child be fed, housed, clothed, and nurtured by others but remain available to be claimed as an offspring to be visited at the whim of a derelict parent who would thereby deny the child the security and stable environment of an adoption." *Derryberry v. Martin*, 686 S.W.2d 94, 97 (Tenn. Ct. App. 1984).

It may be an overstatement in this record to refer to Appellee as a derelict parent, but the fact remains that she was content for Appellants to assume the responsibility for all care of this child, develop a loving parental attachment to the child, and then seek to use provisions of the adoption statutes, never intended for her benefit, but rather for the benefit of the child, to belatedly reassert her parental claim.

As in *Hatcher*, we are satisfied that Ms. Crisp effectively surrendered the child and made no attempt to revoke her surrender within the time limit provided by Tennessee Code Annotated section 36-1-112 (2000). The surrendering parent cannot expand the statutory time limit for withdrawing the surrender by use of a procedural defect that was not designed to protect that parent.

To paraphrase *Hatcher,* undoubtedly other unfulfilled requirements lurk in the labyrinthine provisions of the adoption laws, but as a consequence of her surrender, Ms. Crisp no longer has the standing to raise them.

Since we reverse the findings of the Chancellor relative to the surrender of the child, finding the surrender to be valid under the criteria of *Hatcher*, it is unnecessary to address the issue of abandonment and termination of parental rights. We reverse the action of the trial court in dismissing the adoption petition and remand the case for further proceedings thereon.

Costs of the cause are assessed to the Appellee.

 

 

 

 

_____
WILLIAM B. CAIN, JUDGE